**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| JACKSON TADDEO-WAITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-01352-O-BP |
| | § | |
| X CORP., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to Dismiss *pro se* Plaintiff Jackson Taddeo-Waite's Second Amended Complaint that Defendant X Corp. ("X") filed on January 14, 2026 (ECF No. 75), the response that Taddeo-Waite filed on February 4, 2026 (ECF No. 80), and the reply that X filed on February 18, 2026 (ECF No. 81). After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** X's Motion and **DISMISS** Taddeo-Waite's claims against that defendant.

I.      **BACKGROUND**

Jackson Taddeo-Waite was an X user. Prior to April 2025, he maintained an account on the social media platform where he engaged in political speech and commentary. Some of his posts involved criticism of the Department of Government Efficiency ("DOGE") and its leader, Defendant Elon Musk. Taddeo-Waite alleges that in March 2025, he "raised concerns regarding transparency and abuse of authority." ECF No. 70 at 5. And although Taddeo-Waite was a subscriber to X Premium+, a service he says promised his posts "prioritized ranking" and "boosted visibility," he asserts that "[w]ithin days" of his criticism of Musk, X and Musk "suppressed [Taddeo-Waite's] account visibility to effectively zero" in retaliation for his remarks. *Id.*

This was not the only difficulty Taddeo-Waite experienced while on X. On April 8, 2025, an anonymous X user made a vulgar post about him, asserting that Taddeo-Waite likely performs graphic sex acts on an intellectually disabled minor. Appalled, Taddeo-Waite reported the post.

Upon its review, X determined that the post did not violate the platform's rules. And in the hours that followed, the anonymous user "pinned" the post, which increased its visibility to anyone visiting the user's profile. Taddeo-Waite further alleges that X's recommendation algorithm "distributed" the post "into a geographically narrow and otherwise non-public audience connected" to Taddeo-Waite "despite the [anonymous] account lacking any apparent social-graph connection—such as follower relationships, mutual connections, or prior interaction history" to that audience. *Id.* at 4. Taddeo-Waite asserts that in doing so, X inorganically boosted the visibility of the post and placed it into user feeds it otherwise never would have reached. *See id.* Under what he describes as "coercive circumstances," Taddeo-Waite terminated his X account the next day.

On May 30, 2025, Taddeo-Waite sued X and various other defendants in the United States District Court for the District of Connecticut. ECF No. 1. United States District Judge Vernon D. Oliver subsequently transferred the case to this Court. ECF Nos. 55-56. The case was referred to the undersigned pursuant to Special Order 3. ECF No. 57. With leave of Court, Taddeo-Waite filed his Second Amended Complaint on December 31, 2025. ECF No. 70. In that complaint, he sues only two defendants: X and Musk. He asserts claims for defamation, intentional infliction of emotional distress, and First Amendment retaliation against both defendants, and a breach of contract claim against X. *Id.* at 6-8. He also seeks declaratory relief that 47 U.S.C. § 230 does not immunize Defendants' conduct. *Id.* at 9. Finally, he seeks injunctive relief to remove the challenged post and "[c]ease retaliatory suppression" of his own posts, as well as compensatory damages. *Id.* at 9. On January 14, 2026, X moved to dismiss. ECF No. 75.

II.     **LEGAL STANDARDS**

A.      **Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B.      *Pro se* **parties**

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, "even a liberally-construed *pro se* civil rights complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to state a claim for relief." *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (internal quotation marks omitted).

### C.      Dismissal with or without leave to amend

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible, the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice).

Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). If the court "outline[s] in [its] opinion the deficiencies" of the plaintiff's pleading and the "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that [the] plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-cv-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001). "[A] claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

### III.    ANALYSIS

X raises multiple grounds for dismissal, arguing that Taddeo-Waite's claims are barred under Section 230, the First Amendment, and the relevant terms of service and purchaser terms Taddeo-Waite agreed to when he created his X account and purchased an X Premium+

subscription. ECF No. 75 at 8-14. In the alternative, X argues that Taddeo-Waite has failed to allege plausible claims. *Id.* at 15-21. The Court need not reach each argument because § 230 clearly bars Taddeo-Waite's claims against X.

Section 230 confers broad immunity to Web-based service providers for all claims stemming from their publication of information created by third parties. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). It states that: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). To avail itself of § 230 immunity, X must demonstrate (1) that it is an interactive computer service, (2) whom Taddeo-Waite's claims treat as the publisher or speaker of information (3) provided by another information content provider. *See La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993 (S.D. Tex. 2017).

Here, there is no dispute that X is an interactive computer service. Indeed, earlier this year the Court found that § 230 barred a separate suit against X, which requires an implicit finding that X is an interactive computer service. *See Doe v. X Corp.*, No. 4:25-cv-001282-O, 2026 WL 772384, at *6 (N.D. Tex. Feb. 25, 2026). The Court will therefore only analyze the remaining two elements of § 230 immunity as they apply to each of Taddeo-Waite's claims.

Taddeo-Waite alleges that X: (1) "refused to remove the [anonymous] post," (2) "distributed the accusation through [its] recommendation systems" via X's "control[] [over] whether the post was eligible for algorithmic recommendation, ranking, and distribution," and (3) "suppressed [Taddeo-Waite's] account visibility to effectively zero, despite [Taddeo-Waite's] paid X Premium+ subscription," which Taddeo-Waite describes as activity that coerced the termination of his X account. ECF No. 70 at 3-5. Based on these allegations, Taddeo-Waite asserts claims for

defamation, intentional infliction of emotional distress, breach of contract, and First Amendment retaliation. *Id.* at 6-9.

At the core of Taddeo-Waite's complaint is his desire to hold X liable for allegedly maintaining a graphic and upsetting post on its platform, amplifying the reach of that post, and hampering the extent of Taddeo-Waite's own content. *See id.* at 3-9. X argues that § 230 immunizes it from all three of these allegations. *See* ECF No. 75 at 10-13; ECF No. 81 at 4-6.

### A.      Claims concerning X's decision not to remove the post

Taddeo-Waite's claims concerning X's decision not to remove the anonymous user's post neatly fall into the scope of § 230 immunity.

First, to determine whether a claim treats a defendant as a publisher or speaker, the Court asks "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 797 (5th Cir. 2024). "If the duty derives from the defendant's status or conduct as a publisher or speaker, then section 230 precludes liability." *Id.* (cleaned up). "But if the plaintiff's theories would not require the defendant to exercise some kind of publication or editorial function, then section 230 does not preclude liability." *Id.*

Here, Taddeo-Waite alleges that X violated a duty to remove a graphic post that the anonymous user composed. Under existing caselaw, such a duty treats X as a publisher of another's information. "At its core, § 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'" *Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-cv-0915-B, 2024 WL 1337370, at *8 (N.D. Tex. Mar. 28, 2024) (quoting *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016)). Indeed "'the monitoring, screening, and deletion of [user-

generated] content' are actions 'quintessentially related to a publisher's role.'" *La'Tiejira*, 272 F. Supp. 3d at 993 (alteration in original) (quoting *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003)); *MySpace, Inc.*, 528 F.3d at 420 (same). And "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *La'Tiejira*, 272 F. Supp. 3d at 993 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008)). "[T]hat is the point of Section 230: to immunize web service providers for harm caused by unremoved speech on their website." *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 285 (5th Cir. 2024).

Accordingly, because Taddeo-Waite's claims concerning X's decision not to remove the anonymous user's post treat X as the publisher of another's information, § 230 bars Taddeo-Waite's claims that arise from this alleged conduct.

### B.    Claims concerning X's algorithmic amplification of the post

Taddeo-Waite next targets X's alleged "select[ion]" of an "otherwise unreachable" audience for the anonymous user's post and "dissemination and republication" of the post. ECF No. 80 at 14. He argues that amplifying a post, after being notified that the post was harmful, is "development" activity that takes X beyond the role of a publisher or editor and instead makes it an information content provider that § 230 immunity does not shield. *Id.* at 15; *see also* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by *another* information content provider." (emphasis added)); *id.* § 230(f)(3) (defining "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service").

In reply, X relies on *La'Tiejira* for the proposition that Taddeo-Waite must "do more than allege that [X] *continued to publish* content provided by a third party; [he] must plausibly allege that [X] itself *authored or created* the content" to defeat the application of § 230 immunity. ECF No. 81 at 5 (emphasis in original) (citing *La'Tiejira*, 272 F. Supp. 3d at 994). Because the anonymous user authored the post in question, X argues that Taddeo-Waite's allegations concerning X's decision to keep the post live, even despite notice of harm, must still yield to § 230 immunity. *Id.* As discussed, § 230 immunizes X from suit over its decision not to delete another's post, and whether Taddeo-Waite notified X of the post's harmful nature is immaterial to X's § 230 immunity for that conduct. *See La'Tiejira*, 272 F. Supp. 3d at 994 (citing *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) ("Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content.")).

But this argument does not get to the core of what Taddeo-Waite presently argues. Indeed he distinguishes between post-notice maintenance of the challenged content and post-notice amplification of that content, which he argues pierces § 230 immunity. *See, e.g.*, ECF No. 80 at 15. In this vein, he relies on *Roommates.com*, in which the Ninth Circuit determined that an entity develops information, and thereby loses § 230 immunity, when the entity "materially contribut[es] to [the challenged content's] alleged unlawfulness." *Id.* (citing *Roommates.com*, 521 F.3d at 1167-68). Taddeo-Waite contends that X's application of its algorithm to the anonymous user's post constitutes the kind of material contribution to that post that can render X a developer and thus an information content provider, defeating the application of § 230 immunity. *See id.*

But even were *Roommates.com* binding on this Court, that case does not hold that a platform's algorithmic amplification of a post facially suffices to make the platform a developer of that post, and resultantly ineligible for § 230 immunity. In reaching its conclusion that a

defendant qualifies as an information content provider when it "materially contribut[es] to [the challenged content's] alleged unlawfulness," the Ninth Circuit distinguished between material contributions to content and acts that "augment[ed] the content generally." *Roommates.com*, 521 F.3d at 1168.

The Court finds *Roommates.com* inapposite to the pending case. That case involved the inclusion of personal details about sex, family status, and sexual orientation on lessor and renter profiles that users uploaded to a roommate search service, a practice that the Fair Housing Council plaintiffs alleged violated the Fair Housing Act and California housing discrimination laws. The Ninth Circuit concluded that although it was the third-party users who included the demographic details on their profiles, Roommates.com was likewise a developer of the challenged information for purposes of § 230 immunity because the platform "requir[ed] subscribes to provide the information as a condition of accessing its service." *Roommates.com*, 521 F.3d at 1166. The present case is not similar. Taddeo-Waite does not allege that X required or otherwise compelled the anonymous user to compose and post its graphic allegations against Taddeo-Waite.

Instead, he contends that X's purported material contribution to the post was its "distribut[ion] [of] the post into a new, non-public, geographically narrow audience linked to Plaintiff, which the originated account had no organic way to reach." ECF No. 80 at 14. And he further opines that "[w]hether X's recommendation systems operated as 'neutral tools' or as mechanisms that predictably and selectively amplified a known false felony accusation is a fact-dependent question" that cannot be resolved at the motion-to-dismiss stage. *Id.* at 15.

But these arguments miss that no matter what amplification Taddeo-Waite alleges, this alleged activity has no bearing on the *content* of the anonymous user's post. "The distinction between merely publishing information provided by a third-party . . . and actually creating or

developing any of the information posted . . . is critical." *Wells v. Youtube, LLC*, No. 3:20-cv-2849-S-BH, 2021 WL 2652966, at *3 (N.D. Tex. May 17, 2021), *rec. accepted sub nom.*, 2021 WL 2652514 (N.D. Tex. June 28, 2021) An "interactive computer service is not responsible for information posted 'unless it assisted in the development of what made the content unlawful.'" *Id.* (quoting *LeadClick Media, LLC*, 838 F.3d at 174). And it is "responsible for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content." *Id.* (cleaned up) (quoting *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009)); *see also Nicholas Servs., LLC v. Glassdoor, LLC*, 746 F. Supp. 3d 343, 358 (N.D. Miss. 2024) ("[F]or a website's actions to render [it] an information content provider . . . the website must either take a creational step . . . or it must force its users to take such a step."); *id.* at 355-58 (collecting and discussing cases).

Here, Taddeo-Waite does not state facts showing how X's alleged algorithmic amplification of the anonymous user's post encouraged or contributed to the post's message. Instead, he only alleges that X broadcast that message once the user had already composed and uploaded it. This is unavailing because "[t]he case law confirms that the immunity analysis turns on who was responsible for the specific harmful material at issue, not on whether the service provider was responsible for the general features and mechanisms of the service." *Doe v. Bates*, No. 5:05-cv-91-DF-CMC, 2006 WL 3813758, at *17 (E.D. Tex. Dec. 27, 2006); *see also id.* ("[T]he critical question is not whether the service provider played a role in shaping the forum or service through which the allegedly harmful information was conveyed."). And indeed, courts have consistently found that § 230 immunizes web-based defendants from claims that allege harms caused by content recommendation algorithms. *In re Soc. Media Adolescent Addiction / Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 882 (N.D. Cal. 2024) (collecting cases).

10

Because the anonymous post in this case was indisputably the work of another information content provider, and because Taddeo-Waite has not demonstrated that X is likewise an information content provider, the only remaining question to the application of § 230 immunity to Taddeo-Waite's claims that arise from the function of X's algorithm is whether those claims seek to treat X as a publisher or speaker of the anonymous user's post.

That answer is necessarily yes. This Court's task in this inquiry is to examine whether the duty Taddeo-Waite alleges of X requires X to exercise some kind of publication of editorial function. *Salesforce, Inc.*, 123 F.4th at 797. The Court finds that it does. Taddeo-Waite's claims that derive from X's algorithmic amplification of a post merely accuse X of exercising the same editorial judgment a publication wields when it decides which writers' articles to print on the front page and which to print on the back. As the Northern District of California has noted, and the Court finds persuasive, "[w]hether done by an algorithm or an editor," determining "whether, when, and to whom to publish third-party content" are "traditional editorial functions that are essential to publishing." *In re Soc. Media Adolescent Addiction / Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 833 (N.D. Cal. 2023) ("*Soc. Media I*"); *see also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (finding that content recommendation is conduct by which a platform "act[s] as a publisher of others' content"). Taddeo-Waite's claims thus treat X as a publisher or speaker of the anonymous user's post.

Accordingly, § 230 bars Taddeo-Waite's claims premised on X's algorithmic amplification of the challenged post. Taddeo-Waite's contention that the Court cannot resolve his claims alleging a 'non-neutral' algorithm at the motion-to-dismiss stage is unpersuasive. *See* ECF No. 80 at 15. His complaint, which he has now amended twice, does not draw a connection between X's algorithm and the anonymous user's choice to post a graphic message. It only complains of that

graphic message's reach. As discussed, X's algorithm's role in establishing that reach does not, without more, state a claim against X that can overcome § 230 immunity, and dismissing a claim at the 12(b)(6) stage because § 230 bars it is common practice in the Fifth Circuit. *Fed. Trade Comm'n v. Match Group, Inc.*, No. 3:19-cv-2281-K, 2022 WL 877107, at *6 (N.D. Tex. Mar. 24, 2022) (collecting cases).

### C.   Claims concerning X's suppression of Taddeo-Waite's posts

Taddeo-Waite's final category of claims involves X's alleged suppression of his own posts. Specifically, he alleges that after criticizing Elon Musk and DOGE, X "suppressed [his] account visibility to effectively zero," despite his paid X Premium+ subscription "promising prioritized ranking and boosted visibility." ECF No. 70 at 5 (cleaned up). In addressing this claim, the Court first inquires whether claims concerning content suppression implicate a duty derived from X's status or conduct as a publisher or speaker. *Salesforce, Inc.*, 123 F.4th at 797. The Court finds they do.

Taddeo-Waite alleges that X breached a contractual duty formed when he subscribed to X Premium+ by altering his posts' visibility in purported violation of the promise of boosted visibility that the premium subscription afforded him. But the duty to keep Taddeo-Waite's posts at a certain level of audience visibility ultimately derives from the traditional editorial decisions of "whether, when, and *to whom* to publish content." *Soc. Media I*, 702 F. Supp. 3d at 833 (emphasis added); *see also Castronuova v. Meta Platforms, Inc.*, No. 4:24-cv-02523-YGR, 2025 WL 1914860, at *4 (N.D. Cal. June 10, 2025) (finding the act of "shadow banning" plaintiff's X account fell within "protected publisher activity"); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("traditional editorial functions" include "deciding whether to publish, *withdraw*, postpone, or alter content") (emphasis added)); *Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011

12

WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011) ("[R]emoving certain reviews . . . or changing their order of appearance—falls within the conduct immunized by § 230(c)(1).").

Importantly, it is immaterial that the duty here was contractual in nature. Section 230 does not provide any immunity exception for breach of contract claims, *see* 47 U.S.C. § 230, and "courts have consistently held that § 230(c)(1) bars breach of contract claims, including those related to the removal of content." *N.J. Chinese Cmty. Ctr. v. McAleer*, No. 21-08320 (GG) (RLS), 2025 WL 1564869, at *16 (D.N.J. June 3, 2025) (collecting cases).

Next, the Court considers whether the posts that Taddeo-Waite alleges X suppressed constitute "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Here, to be sure, the "poster" was not a third party, but Taddeo-Waite himself. However, this does not render § 230 immunity inapplicable. As the Ninth Circuit has held, § 230(c)(1)'s "reference to another information content provider . . . distinguishes the circumstance in which the interactive computer service itself meets the definition of 'information content provider' with respect to the information in question." *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003).

Although the Court has not located any Fifth Circuit authority precisely on point, courts in the Ninth Circuit have routinely held that the plain text of § 230(c)(1) does not foreclose immunity for claims premised on information the plaintiff himself provides. *See, e.g.*, *Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *4 (N.D. Cal. May 9, 2019) ("[P]laintiff reads 'third-party' into a statute that only requires 'another' party, which plaintiff certainly qualifies as."). So, the term "third party" that many courts employ in the § 230 immunity analysis is a shorthand term of art "used to refer to content created entirely by individuals or entities other than the interactive computer service provider." *See Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015), *aff'd sub nom.*, 697 F. App'x 526

(9th Cir. 2017). Therefore, the plaintiff himself qualifies as "another information content provider." *See Ebeid*, 2019 WL 2059662, at \*4; *see also Haywood v. Amazon.com, Inc.*, No. 2:22-cv-01094-JHC, 2023 WL 4585362, at \*10 (W.D. Wash. July 18, 2023) (collecting cases).

The approach that courts in the Ninth Circuit have used is persuasive here. *See also MySpace, Inc.*, 528 F.3d at 418 (noting the broad construction courts give § 230 immunity); 47 U.S.C. § 230(f)(3) ("The term 'information content provider' means *any* person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." (emphasis added)). Thus, the operative question is whether X, the interactive computer service, provided the information at the heart of Taddeo-Waite's suppression claims. It did not. Until he terminated his account, Taddeo-Waite was an X user and an X poster, and the posts whose suppression he sues over were his own. *See* ECF No. 70 at 5. Because Taddeo-Waite's claims concerning X's post suppression concern information provided by "another information content provider," and because X meets the other two elements of § 230 immunity, X is immune from these claims.

### D.   Declaratory relief

Finally, Taddeo-Waite seeks a declaration that § 230 does not immunize the conduct he alleges of X in this case. *See* ECF No. 9. However, for the reasons previously stated, § 230(c)(1) does immunize X's conduct. While § 230(c)(2) also offers a distinct avenue to immunity, the Court need not reach a determination of whether § 230(c)(2) also immunizes X in order to deny Taddeo-Waite's desired declaratory relief because § 230(c)(1) immunizes X. *See* 47 U.S.C. § 230(c)(2).

### E.   Dismissal with or without leave to amend

The Court may appropriately dismiss an action with prejudice if it finds that an affirmative defense appears clearly on the face of the pleadings. *See Clark*, 794 F.2d at 970. This includes in

the § 230 immunity context. *Match Group, Inc.*, 2022 WL 877107, at *6 (collecting cases). Because Taddeo-Waite's claims against X cannot survive the immunity § 230 affords X even if he were to amend his Amended Complaint, the Court should dismiss those claims without leave to amend.

## IV.     CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** X's Motion to Dismiss (ECF No. 75) and **DISMISS** Taddeo-Waite's claims against X.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on April 23, 2026.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

15